1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ROGELIA LOSA ESQUIVIAS,     )   Case No. CV 11-6183-SP
      Plaintiff,             )
                       )
      v.                  )   **MEMORANDUM OPINION AND**
                       )   **ORDER**
MICHAEL J. ASTRUE,          )
Commissioner of Social Security   )
Administration,               )
                       )
      Defendant.           )
                       )
_____ )

## I.

## INTRODUCTION

On August 2, 2011, plaintiff Rogelia Losa Esquivias filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance Benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) (2009). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Three issues are presented for decision here: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinion of plaintiff's treating physician;

(2) whether the ALJ properly evaluated plaintiff's credibility and subjective symptoms; and (3) whether the ALJ properly determined, at step four, that plaintiff is capable of performing past relevant work.  Pl.'s Mem. at 4-6, 7-9, 9-11; Def.'s Mem. at 2-5, 5-7, 7-9.

Having carefully studied, inter alia, the parties' written submissions and the Administrative Record ("AR"), the court finds that, as detailed herein, the ALJ properly rejected both the opinion of plaintiff's treating physician and plaintiff's subjective complaints.  But the court also finds the ALJ erred in failing to make specific findings regarding the relation between plaintiff's residual functional capacity and the physical demands of her past relevant work.  Therefore, the court remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-three years old on the date of her July 1, 2010 administrative hearing, has a third-grade education from Mexico.  *See* AR at 29, 147.  Her past relevant work includes employment as a quality control inspector.  *Id.* at 38.

On January 26, 2009, plaintiff protectively applied for DIB, alleging that she has been disabled since January 15, 2008 due to generalized arthritis, left shoulder pain, lumbar spine pain, cervical spine pain, bilateral foot pain, bilateral hand pain, and back injury.  *See* AR at 136, 141.  Plaintiff's application was denied initially and upon reconsideration, after which she filed a request for a hearing.  *Id.* at 44, 45, 48-53, 55, 57-62, 65.

On July 1, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ with the assistance of an interpreter.  AR at 29-38.  The ALJ also heard testimony from E. Kurata, a vocational expert ("VE").  *Id.* at 37-42.  On August 13, 2010, the ALJ denied plaintiff's request for benefits.  *Id.* at 11-17.

1    Applying the well-known five-step sequential evaluation process, the ALJ

2    found, at step one, that plaintiff has not engaged in substantial gainful activity since

3    January 15, 2008, her alleged disability onset date.  AR at 13.

4    At step two, the ALJ found that plaintiff suffers from severe medically

5    determinable impairments consisting of: asthma, degenerative disc disease of the

6    lumbosacral spine, and left shoulder pain.  AR at 13.

7    At step three, the ALJ determined that the evidence does not demonstrate that

8    plaintiff's impairments, either individually or in combination, meet or medically

9    equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix

10   1.  AR at 13.

11   The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and

12   determined that she can perform light work with the following limitations:

13   "occasional climbing, bending, kneeling, stooping, crouching and crawling";

14   "occasional reaching overhead with the left upper extremity"; and "avoidance of

15   working in hazardous environments where there are concentrated exposure to dust,

16   fumes, and pollutants."  AR at 15 (emphasis omitted).

17   The ALJ found, at step four, that plaintiff is capable of performing past

18   relevant work as a quality control inspector.  AR at 16.  The ALJ therefore

19   concluded that plaintiff was not suffering from a disability as defined by the Social

20   Security Act.  *Id.* at 11, 16-17.

21   Plaintiff filed a timely request for review of the ALJ's decision, which was

22   denied by the Appeals Council.  AR at 1-3, 5.  The ALJ's decision stands as the

23

24   _____

25   [1]   Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26   n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

27   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir.

28   2007) (citation omitted).

3

1   final decision of the Commissioner.

2                                   **III.**

3                        **STANDARD OF REVIEW**

4           This court is empowered to review decisions by the Commissioner to deny

5   benefits.  42 U.S.C. § 405(g) (2010).  The findings and decision of the Social

6   Security Administration must be upheld if they are free of legal error and supported

7   by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).

8   But if the court determines that the ALJ's findings are based on legal error or are

9   not supported by substantial evidence in the record, the court may reject the findings

10  and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033,

11  1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

12          "Substantial evidence is more than a mere scintilla, but less than a

13  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant

14  evidence which a reasonable person might accept as adequate to support a

15  conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

16  F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,

17  the reviewing court must review the administrative record as a whole, "weighing

18  both the evidence that supports and the evidence that detracts from the ALJ's

19  conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

20  simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d

21  at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

22  evidence can reasonably support either affirming or reversing the ALJ's decision,

23  the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*

24  (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

25                                   **IV.**

26                            **DISCUSSION**

27  **A.**      **The ALJ Properly Rejected the Opinion of Plaintiff's Treating Physician**

28          Plaintiff contends that the ALJ failed to articulate legally sufficient reasons

                                          4

1   for rejecting the opinion of her treating physician, Dr. Thomas J. Grogan.  Pl.'s

2   Mem. at 4-6.  The court disagrees, for the reasons discussed below.

3       In evaluating medical opinions, Ninth Circuit case law and Social Security

4   regulations distinguish among the opinions of three types of physicians: (1) those

5   who treat the claimant (treating physicians); (2) those who examine but do not treat

6   the claimant (examining physicians); and (3) those who neither examine nor treat

7   the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th

8   Cir. 1996); *see also* 20 C.F.R. § 404.1527(c) (2012) (prescribing the respective

9   weight to be given the opinion of treating sources and examining sources).  "As a

10  general rule, more weight should be given to the opinion of a treating source than to

11  the opinion of doctors who do not treat the claimant."  *Lester*, 81 F.3d at 830

12  (citation omitted); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036

13  (9th Cir. 2003).  This is so because a treating physician "is employed to cure and

14  has a greater opportunity to know and observe the patient as an individual."

15  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted).  "The

16  opinion of an examining physician is, in turn, entitled to greater weight than the

17  opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830 (citations omitted).

18      Where the treating physician's "opinion is not contradicted by another doctor,

19  it may be rejected only for 'clear and convincing' reasons."  *Benton*, 331 F.3d at

20  1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the

21  ALJ may disregard the opinion of a treating physician, whether or not controverted,

22  the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear

23  and convincing reasons." (citation omitted)).  "Even if the treating doctor's opinion

24  is contradicted by another doctor, the [ALJ] may not reject this opinion without

25  providing specific and legitimate reasons supported by substantial evidence in the

26  record for doing so."  *Lester*, 81 F.3d at 830 (internal quotation marks and citation

27  omitted); *accord Reddick*, 157 F.3d at 725.  The ALJ can meet the requisite specific

28  and legitimate standard "by setting out a detailed and thorough summary of the facts

1   and conflicting clinical evidence, stating his interpretation thereof, and making

2   findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal

3   quotation marks and citation omitted).

4        Here, having duly reviewed the record and the parties' written submissions,

5   the court finds that ALJ properly rejected Dr. Grogan's opinion.  The ALJ "set[] out

6   a detailed and thorough summary of the facts and conflicting clinical evidence,

7   stat[ed] his interpretation thereof," and concluded that there is no objective evidence

8   to support "Dr. Grogan's extremely limited [RFC] assessment," whereas the medical

9   consultants' "conclusions are consistent with the objective findings and the

10  evidence of record."  *See Magallanes*, 881 F.2d at 751 (internal quotation marks and

11  citation omitted); AR at 14-15.  This is a specific and legitimate reason for rejecting

12  Dr. Grogan's opinion.  *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004)

13  (ALJ may discredit treating physician's opinions that are conclusory, brief, and

14  unsupported by the record as a whole, or by objective medical findings); *Thomas v.*

15  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("ALJ need not accept the opinion of

16  any physician, including a treating physician, if that opinion is brief, conclusory,

17  and inadequately supported by clinical findings" (citation omitted)); *Burkhart v.*

18  *Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating

19  physician's opinion, which was unsupported by medical findings, personal

20  observations, or test reports).

21       First, Dr. Grogan's opinion is unsupported by his own objective findings.  For

22  instance, although Dr. Grogan (in a December 11, 2008 Physical Capacities

23  Evaluation check-list form) opined that plaintiff can only occasionally lift and carry

24  up to five pounds, Dr. Grogan found on physical examination that same day that

25  plaintiff had "a full range of motion of the shoulders, elbows, wrists and hands

26  bilaterally" and that "Motor examination [wa]s 5/5 [in] all groups tested."  *See* AR

27  at 233, 262-63; *see also* AR at 14.  And despite opining that plaintiff can only sit

28  four hours, stand three hours, and walk two hours in an eight-hour work day (*id.* at

233), Dr. Grogan found that: plaintiff's "[g]ait [wa]s normal to heel and toe without crutch, cane, or orthoses"; on spine exam, plaintiff "had a full range of motion of the cervical spine with pain noted only on the extremes of motion"; and "[o]n lower extremity examination[, plaintiff] ha[d] full range of motion of the hips, knees, ankles and subtalar joints bilaterally." *Id.* at 262-63.

Second, Dr. Grogan's RFC assessment is unsupported by the opinions of Dr. Carlos Gonzalez (a consultative examining physician) and Dr. R. May (consultative non-examining physician). Among other things, Dr. Gonzalez found – based upon a physical examination on May 3, 2009, plaintiff's medical history, and review of the medical record – that "[l]ifting and carrying can be performed approximately 50 pounds occasionally and 25 pounds frequently" and that plaintiff "does not have any standing and walking limitations." AR at 267; *see Magallanes*, 881 F.2d at 751 (examining physician's opinion may constitute substantial evidence if the "nontreating physician relies on independent clinical findings that differ from the findings of the treating physician" (internal quotation marks and citations omitted)). Likewise, Dr. May found plaintiff less limited than Dr. Grogan opined. Specifically, Dr. May found, inter alia, that: plaintiff can occasionally lift twenty pounds and frequently lift ten pounds; plaintiff can stand and walk about six hours in an eight-hour workday; and plaintiff can sit about six hours in an eight-hour workday. AR at 277; *see Andrews*, 53 F.3d at 1041-42 (non-examining physician's opinion may constitute substantial evidence only when it is "supported by other evidence in the record and [is] consistent with it"). The ALJ found these opinions supported by the record. AR at 14-15.

Plaintiff also argues that "if the ALJ thought that the treating doctor's residual functional capacity assessment was inconsistent with his records[,] the ALJ should have attempted to recontact Dr. Grogan." Pl.'s Mem. at 6. But "[a]n ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." *Bayliss v. Barnhart*, 427 F.3d

1211, 1217 (9th Cir. 2005); *see Mayes*, 276 F.3d at 459-60 (ALJ has a duty to
develop the record further only "when there is ambiguous evidence or when the
record is inadequate to allow for proper evaluation of the evidence" (citation
omitted)); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ
thought he needed to know the basis of [a doctor's] opinion[] in order to evaluate
[it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing
the physician[] or submitting further questions to [him or her]." (citations omitted)).
Here, the ALJ, relying on the opinions of Dr. Gonzalez and Dr. May, did not find
Dr. Grogan's report ambiguous nor insufficient to make a disability determination.
Consequently, the ALJ did not have a duty to re-contact Dr. Grogan.

In short, the court finds that the ALJ provided a specific and legitimate reason
– supported by substantial evidence – for rejecting Dr. Grogan's opinion, and that
the ALJ did not have a duty to re-contact Dr. Grogan.  Accordingly, the ALJ did not
err in evaluating Dr. Grogan's opinion.

**B.**   **The ALJ Properly Discounted Plaintiff's Credibility and Subjective Complaints**

Plaintiff argues that the ALJ failed to properly assess her credibility.  *See* Pl.'s
Mem. at 7-9.  Specifically, plaintiff contends that the ALJ improperly discounted
her credibility based upon "not receiving ongoing care, . . . not be[ing] referred to a
pain clinic, . . . not us[ing] home remedies such as 'hot water bottles' or hot baths
for pain relief," and "not seem[ing] too motivated to work."  *Id.* at 8.  The court
disagrees with plaintiff and, for the reasons discussed below, finds that the ALJ
provided clear and convincing reasons for discounting her credibility.

A claimant carries the burden of producing objective medical evidence of his
or her impairments and showing that the impairments could reasonably be expected
to produce some degree of the alleged symptoms.  *Benton*, 331 F.3d at 1040.  But
once the claimant meets that burden, medical findings are not required to support
the alleged severity of pain.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)

1  (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)

2  ("claimant need not present clinical or diagnostic evidence to support the severity of

3  his pain" (citation omitted)).

4       Instead, once a claimant has met the burden of producing objective medical

5  evidence, an ALJ can reject the claimant's subjective complaint "only upon (1)

6  finding evidence of malingering, or (2) expressing clear and convincing reasons for

7  doing so." *Benton*, 331 F.3d at 1040.  The ALJ may consider the following factors

8  in weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2)

9  inconsistencies either in the claimant's testimony or between the claimant's

10  testimony and his or her conduct; (3) his or her daily activities; (4) his or her work

11  record; and (5) testimony from physicians and third parties concerning the nature,

12  severity, and effect of the symptoms of which she complains. *Thomas*, 278 F.3d at

13  958-59.  Here, the ALJ did not find evidence of malingering. *See generally* AR at

14  11-17.  Thus, in rejecting plaintiff's credibility, the ALJ was required to articulate

15  clear and convincing reasons. *See Benton*, 331 F.3d at 1040.  Having carefully

16  reviewed the record, the court finds that the ALJ provided several clear and

17  convincing reasons for discounting plaintiff's subjective complaints.

18       First, the ALJ found that the objective medical evidence does not support

19  plaintiff's alleged degree of disability. *See* AR at 15; *see also Batson*, 359 F.3d at

20  1197 ("the lack of objective medical evidence supporting [a claimant's] claims . . .

21  constitute[s] substantial evidence in support of the ALJ's negative credibility

22  determination"); *Thomas*, 278 F.3d at 959 (lack of objective medical evidence

23  supporting descriptions of pain and limitations negatively affected the claimant's

24  credibility regarding her inability to work).  Although a lack of objective evidence

25  supporting plaintiff's symptoms cannot be the sole reason for rejecting her

26  testimony, it can be one of several factors used in evaluating the credibility of her

27  subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir.

28  2001).

Second, the ALJ properly discounted plaintiff's subjective complaints as inconsistent with her conservative treatment. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); *see Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of credibility evaluation, claimant's failure to request medical treatment commensurate with the "supposedly excruciating" pain alleged, and the "'minimal, conservative treatment'" (citation omitted)); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between the claimant's allegations of "'persistent and increasingly severe pain'" and the nature and extent of treatment obtained).

The ALJ found that plaintiff "d[id] not receive ongoing care and, when treated, she received only conservative treatment, mostly medication management." AR at 15. Specifically, the ALJ found at that time: plaintiff was not participating in physical therapy; plaintiff "d[id] not use a TENS unit, and she [w]as not prescribed a cane, walker or wheelchair"; "Dr. Gonzalez found no need for any assistive device for walking"; and "[plaintiff] ha[d] not been referred to a pain clinic." *Id.* Indeed, although plaintiff testified that "[her] back hurts a lot . . . [and her] left arm hurts," she further testified that the only treatment she was receiving at that time was "medicines that [Dr. Grogan] prescribed." *Id.* at 30, 32; *see id.* at 177-78 (plaintiff was prescribed Advil 200 mg and Naproxen (also known as Aleve) for pain). Also, plaintiff stated in a February 21, 2009 Pain Questionnaire form that, in addition to pain medications, her treatment consisted of "rest, hot bathes, Blue ice gel, [and] other ointments." *Id.* at 258.

Third, the ALJ properly discounted plaintiff's subjective complaints based upon ordinary techniques of trustworthiness determination, such as inconsistent statements regarding her abilities. *See* AR at 16; *see also Thomas*, 278 F.3d at 958-59 (when weighing a claimant's credibility, the ALJ may consider inconsistencies

between the claimant's testimony); *Tonapetyan*, 242 F.3d at 1148 (ALJ may engage in ordinary techniques of credibility evaluation, such as considering inconsistencies in a claimant's testimony).  In this case, the ALJ found plaintiff's alleged inability to communicate in English inconsistent with: (1) her testimony that she came to the United States at the age of nineteen or twenty (over thirty-three years before the date of her administrative hearing); and (2) her ability to work in semiskilled work, as a quality control worker, for about twelve years.  AR at 16; *see* AR at 140 (plaintiff stated in a Disability Report - Adult Form that she can not speak or understand English).  That plaintiff had been in the United States for more than three decades does not necessarily mean she could communicate in English.  But the ALJ properly pointed to plaintiff's work as inconsistent with her claimed language limitations.  Specifically, plaintiff stated in the Disability Report - Adult Form that part of her duties as a quality control worker was to write reports, complete reports, or perform similar duties.  *Id.* at 142.  Thus, this was a proper reason for rejecting plaintiff's credibility.

Notwithstanding the aforementioned legitimate credibility findings, the ALJ's other purported reason for his adverse credibility finding – that plaintiff's "daily activities are also inconsistent with her allegations" – is not a valid reason for discounting plaintiff's credibility.  *See* AR at 16.  Although the ALJ noted that "[plaintiff] reported that she ran errands, shopped, cooked and did light household chores," the ALJ failed to demonstrate how plaintiff's ability to perform these daily activities is inconsistent with her alleged limitations.  *See Reddick*, 157 F.3d at 722 (only if a plaintiff's level of activity is inconsistent with her alleged limitations will these activities have any bearing on claimant's credibility); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

1   Nevertheless, the ALJ's misplaced reliance on plaintiff's daily activities to
2   discount her credibility was harmless.  *See Batson*, 359 F.3d at 1195-97 (ALJ erred
3   in relying on one of several reasons in support of an adverse credibility
4   determination, but such error was harmless because the ALJ's remaining reasons
5   and ultimate credibility determination were adequately supported by substantial
6   evidence in the record).  The ALJ's error does not "negate the validity" of his
7   ultimate credibility finding, and the ALJ's decision remains "legally valid, despite
8   such error."  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)
9   (internal quotation marks and citation omitted).

10  **C.    The ALJ Erred, at Step Four, in Finding Plaintiff Capable of Performing**
11  **Past Relevant Work**

12  Plaintiff contends the ALJ improperly determined her capable of performing
13  her past relevant work (quality control inspector) as actually and generally
14  performed.  Pl.'s Mem. at 9-11.  Plaintiff specifically asserts that: (1) the job was
15  actually performed at a medium exertional level, and she was found incapable of
16  performing work at that level; and (2) she is incapable of performing her past
17  relevant work as generally performed because "she does not possess the requisite
18  language requirements to perform this job."  *Id.* at 9.  Defendant concedes that the
19  ALJ erred in finding plaintiff capable of performing her past relevant work as
20  actually performed.  Def.'s Mem. at 8.  But defendant contends that "the ALJ did
21  properly find that Plaintiff could perform her past work as she generally performed
22  it, and therefore was not disabled at Step Four."  *Id.*  For the reasons discussed
23  below, the court disagrees with defendant and finds the ALJ erred at step four.

24  "At step four of the sequential analysis, the claimant has the burden to prove
25  that he cannot perform his prior relevant work 'either as actually performed or as
26  generally performed in the national economy.'"  *Carmickle*, 533 F.3d at 1166
27  (citation omitted).  "Although the burden of proof lies with the claimant at step four,
28  the ALJ still has a duty to make the requisite factual findings to support his

12

conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted). The ALJ must make specific findings as to: (1) "the claimant's residual functional capacity"; (2) "the physical and mental demands of the past relevant work"; and (3) "the relation of the residual functional capacity to the past work." *Id.* at 845 (citing Social Security Ruling ("SSR") 82-62).[2/] But the ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." *Pinto*, 249 F.3d at 845.

The court disagrees with plaintiff that "the ALJ . . . erred in finding that [plaintiff] could perform her past work as it is generally performed because she does not possess the requisite language requirements to perform this job." Pl.'s Mem. at 9. In assessing whether or not a claimant can perform past relevant work, the claimant's assessed RFC is compared with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1560(b) (2012). Education will not normally be considered until step five of the evaluation process. *See* 20 C.F.R. § 404.1560(c) (2012); *but cf. Pinto*, 249 F.3d at 847 n.5 ("We decline to reach the question of whether illiteracy may properly be considered at step four of a disability determination."). If the ALJ finds, as part of a claimant's assessed RFC, that illiteracy is a limitation, then the DOT's job description must comport with this limitation too in order for the ALJ to rely on the DOT. *Pinto*, 249 F.3d at 847. Otherwise, "the ALJ must definitively explain this deviation." *Id.* In this case, because the ALJ's RFC assessment of plaintiff did not include illiteracy, the ALJ

---

[2/] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1  was not required to consider illiteracy at step four of the disability determination.
2  *See id.*

3      Although the ALJ did not err with respect to plaintiff's alleged language
4  limitations, the ALJ did err in failing to make specific findings as to the relation of
5  plaintiff's other assessed limitations to her past work as described in the DOT.
6  Despite finding, inter alia, that plaintiff is limited to "occasional[ly] reaching
7  overhead with the left upper extremity," the ALJ inexplicably concluded that
8  plaintiff "is able to perform [her past relevant work] as . . . generally performed."
9  *See* AR at 15, 16.  Particularly problematic here is that, according to the DOT,
10  quality control inspector work requires frequently reaching with both extremities.
11  *See* DOT No. 725.687-026, 1991 WL 679565.  "[I]n order for an ALJ to rely on a
12  job description in the [DOT] that fails to comport with a claimant's noted
13  limitations, the ALJ must definitively explain this deviation." *Pinto*, 249 F.3d at
14  847; *see also Carmickle*, 533 F.3d at 1167 ("the ALJ always has a duty to make the
15  requisite factual findings to support his conclusion at step four" (internal quotation
16  marks and citation omitted)).  The ALJ here failed to include any findings or
17  explanation for how he determined that a plaintiff he found limited to
18  "occasional[ly] reaching overhead with the left upper extremity" was nonetheless
19  capable of frequently reaching with both extremities.

20      To the extent the ALJ relied on the VE's testimony regarding the
21  requirements of the quality control inspector job, such reliance is misplaced because
22  the VE's testimony contradicted the DOT and the record lacks persuasive evidence
23  to support the deviation.  *See* AR at 39; *Pinto*, 249 F.3d at 846 (for an ALJ to accept
24  vocational expert testimony that contradicts the DOT, the record must contain
25  "persuasive evidence to support the deviation" (internal quotation marks and
26  citation omitted)).  Accordingly, the ALJ erred in finding plaintiff capable of
27  performing her past relevant work as generally performed, as well as having erred in
28  finding plaintiff capable of performing the work as actually performed.

1

2

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility).  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to make specific findings as to the relation of plaintiff's RFC to her past work as both actually and generally performed.  Particularly with respect to the relation between plaintiff's RFC and her past work as generally performed, the record has not been fully developed.  On remand, the ALJ shall reevaluate the physical and mental demands of plaintiff's past work – as generally performed, as actually performed, or both – and either find them consistent or inconsistent with plaintiff's RFC.  In either case, the ALJ shall provide an explanation for this finding with references to the usual sources of evidence as to the physical and mental demands of plaintiff's past work.  And, if necessary, the ALJ shall proceed to step five to determine what work, if any, plaintiff is capable of performing.

/ / /

/ / /

/ / /

## VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: June 26, 2012

_____

SHERI PYM
UNITED STATES MAGISTRATE JUDGE